Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| PILAR PÉREZ RODRÍGUEZ<br><br>Peticionaria<br><br>v.<br><br>ONIER IZQUIERDO CAMACHO<br><br>Recurrido | TA2026CE00575 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: CB2023CV00261<br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

*Martínez Cordero, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 15 de mayo de 2026.

Comparece Pilar Pérez Rodríguez (en adelante, señora Pérez Rodríguez o peticionaria) mediante un recurso de *certiorari*, para solicitarnos la revisión de la *Resolución y Orden* emitida y notificada el 13 de abril de 2026, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez.[1] Mediante la *Resolución y Orden* recurrida, el tribunal de instancia le impuso a la señora Pérez Rodríguez una sanción económica de $1,500.00 dólares, tras incumplir con varias órdenes.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de c*ertiorari.*

I

Precisa iniciar haciendo mención de que esta es la *segunda* ocasión en que se recibe un recurso apelativo con relación al caso

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 306.

del título.[2] A tenor, detallaremos aquellos incidentes procesales que sean relevantes al recurso incoado en esta ocasión.

Allá para el 13 de abril de 2023, la peticionaria instó una *Demanda* sobre liquidación de comunidad de bienes post ganancial.[3] En reacción, el 21 de julio de 2023, el señor Onier Izquierdo Camacho (en adelante, señor Izquierdo Camacho o recurrido) presentó su *Contestación a Demanda.*[4]

Como parte de los trámites procesales, los cuales no se limitaron al inicio del descubrimiento de prueba, las partes presentaron el *Informe para el manejo de caso.*[5]. De ahí, el foro de instancia procedió a señalar la conferencia inicial, la cual fue celebrada.[6]

Según se desprende de los autos, los procesos relacionados al descubrimiento de prueba continuaron, para lo cual, durante la celebración de varias vistas, el tribunal de instancia intervino en la calendarización, así como que emitió órdenes sobre el manejo del caso.

Luego de varios incidentes procesales innecesarios reseñar, el 23 de julio de 2025, el señor Izquierdo Camacho presentó una *Solicitud de sentencia sumaria parcial.*[7]. En reacción, el 29 de agosto de 2025, la peticionaria interpuso su *Oposición a moción de sentencia sumaria parcial por falta de un adecuado descubrimiento de prueba.*[8]

---

[2] El primer recurso apelativo fue presentado en el alfanumérico TA2026AP00077. Mediante *Sentencia* emitida el 9 de abril de 2026, un Panel hermano confirmó la *Sentencia Parcial* emitida y notificada el 4 de diciembre de 2025, por el foro primario. Véase el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 6, y el SUMAC TPI, a la Entrada Núm. 256.

[3] SUMAC TPI, a la Entrada Núm. 1. Las partes del título disolvieron su relación matrimonial mediante Sentencia de divorcio en el alfanumérico MZ2020RF00530. Véase el SUMAC TPI en el caso de marras, a la Entrada Núm. 1, Anejo 1.

[4] SUMAC TPI, a la Entrada Núm. 15.

[5] *Íd.,* a la Entrada Núm. 54.

[6] *Íd.,* a las Entradas Núm. 57 y 58.

[7] *Íd.,* a la Entrada Núm. 181.

[8] *Íd.,* a la Entrada Núm. 207.

En el interín, el 3 de octubre de 2025, el foro de instancia expidió *Citación a deposición (Regla 40 de Procedimiento Civil (Subpoena Duces Tecum),* en lo atinente al Banco Popular de Puerto Rico, Donna A. Maldonado Rivera, Esq. Vice President & Senior Councel.[9] Entonces, el 8 de octubre de 2025, se presentó, entre otras, la correspondiente citación debidamente diligenciada.[10] Según surge del documento, se le citó a una deposición para el 21 de noviembre de 2025, y se le requirió tener disponible una serie de documentos relacionados a ciertas entidades que allí se detallaron.

En lo relativo a la solicitud de sentencia parcial presentada por el señor Izquierdo Camacho, el 4 de diciembre de 2025, el tribunal *a quo* emitió y notificó *Sentencia Parcial.*[11] Mediante este dictamen, declaró *Ha Lugar* la solicitud de sentencia sumaria en cuanto a la reclamación presentada sobre la naturaleza privativa del treinta y tres por ciento (33%) de las acciones de Auto Stop., Inc., al quedar establecido que dicho bien fue adquirido mediante donación gratuita el 1 de noviembre de 2019. Dispuso, además, que las restantes controversias, relacionadas con el valor, aumentos o posibles créditos no eran susceptibles de adjudicación por la vía sumaria y quedarían reservadas para su consideración con el trámite ordinario del caso.

Luego, el 8 de diciembre de 2025, el señor Izquierdo Camacho compareció mediante *Moción informativa.*[12] Adjuntó copia de una carta notificada por el Banco Popular de Puerto Rico (BPPR) mediante la cual requirió la devolución de documentos obtenidos por la peticionaria desde abril de 2025, en violación a varios preceptos legales. Esbozó desconocer que la peticionaria tuviese esos documentos y que nunca le fueron notificados. Explicó que el

---

[9] SUMAC TPI a la Entrada Núm. 230.
[10] *Íd.*
[11] *Íd.*, a la Entrada Núm. 256.
[12] *Íd.,* a la Entrada Núm. 257.

requerimiento del BPPR se debía a que hubo error al notificarlos y que los mismos contenían información privilegiada, confidencial y sensitiva de terceros que no eran parte en el caso.

En respuesta, mediante *Resolución y Orden* emitida y notificada el 16 de diciembre de 2025, el tribunal de instancia ordenó a la peticionaria, por conducto de sus representantes legales, la devolución inmediata de los documentos requeridos por el Banco Popular de Puerto Rico.[13]

El mismo 16 de diciembre de 2025, el señor Izquierdo Camacho presentó otra *Moción informativa.*[14]. Cuestionó cómo se obtuvieron los documentos remitidos por el BPPR, puesto a que no lograron ubicar en el expediente judicial orden alguna para que un tercero, como BPPR, proveyera la información o documentos a la peticionaria. En respuesta, mediante *Resolución* emitida y notificada en esa misma fecha, el tribunal *a quo* tomó conocimiento de lo esgrimido.[15]

Así las cosas, el mismo 16 de diciembre de 2025, compareció de manera especial Auto Stop Inc., Auto Stop Aguadilla Inc., Auto Stop San Germán Inc., Auto Stop Hatillo Inc., Auto Stop San Sebastián Inc. y Auto Stop San Sebastián OIC, LLC (AUTO STOP GROUP), mediante *Moción urgente solicitando que se dé por finalizado el proceso de descubrimiento de prueba respecto al tercero no demandado Auto Stop Group, y para solicitar orden protectora.*[16] Arguyeron que, aunque no eran parte en el caso, estaban afectados por el descubrimiento de prueba en curso. Puntualizó que, aun cuando se encontraban pendiente unas deposiciones, la peticionaria varió unilateralmente el mecanismo antes aludido, convirtiéndolas en una producción de documentos. Como consecuencia de lo

---

[13] SUMAC TPI, a la Entrada Núm. 261.
[14] *Íd.,* a la Entrada Núm. 260.
[15] *Íd.,* a la Entrada Núm. 263.
[16] *Íd.,* a la Entrada Núm. 264.

anterior, el BPPR notificó unos doscientos noventa y cuatro (294) archivos, los cuales incluían información privilegiada de AUTO STOP GROUP. Dada la afectación provocada por dicha divulgación errónea solicitaron que se ordenara su devolución y destrucción y se prohibiera su uso en el pleito; entre otros remedios.

En respuesta, el 22 de diciembre de 2025, tribunal de instancia emitió y notificó *Resolución y Orden.*[17]. Ordenó, en lo atinente, a la peticionaria a devolver de forma inmediata y a destruir los 294 archivos divulgados. Advirtió, además, que no se permitiría la utilización de los documentos por ser confidenciales, secretos de negocio y datos sensibles.

Por otro lado, el 17 de diciembre de 2025, el recurrido incoó una *Urgente moción informativa, en solicitud de término y de orden protectora provisional.*[18]. Esbozó que necesitaba un término para ver de qué trataban los documentos remitidos por error por el BPPR y que, en el interín, debía emitirse una orden protectora provisional para que se prohibiera el uso, la transmisión, divulgación o reproducción de los documentos.

En respuesta, mediante *Resolución y Orden* emitida y notificada el 22 de diciembre de 2025, el foro de instancia concedió a las partes hasta el 15 de marzo de 2026, para revisar el volumen de documentos y someter las objeciones individuales a los documentos incorrectamente divulgados por el BPPR. Además, prohibió a todas las partes y a sus abogados a usar, transmitir divulgar o reproducir los documentos provistos por BPPR.

En lo relativo a la *Sentencia Parcial* previamente emitida, tras haber quedado inconforme, el 19 de diciembre de 2025, la peticionaria presentó una solicitud de reconsideración.[19]. Esgrimió

---

[17] SUMAC TPI, a la Entrada Núm. 267.
[18] *Íd.,* a la Entrada Núm. 265.
[19] *Íd.,* a la Entrada Núm. 266.

que el foro de instancia había emitido una sentencia sumaria de forma prematura, sin haber concluido el descubrimiento de prueba y, por tal razón, debía dejarse sin efecto. Como parte del escrito, solicitó la reconsideración de la *Resolución y Orden* emitida el 16 de diciembre de 2025, mediante la cual se ordenó la entrega de los documentos requeridos por BPPR.[20] Peticionó que se declarara *Ha Lugar* la reconsideración y, en consecuencia, se dejara sin efecto la S*entencia Parcial,* para que la misma se atendiera cuando el tribunal tuviese ante sí toda la información necesaria para su consideración. En respuesta, mediante *Resolución* emitida y notificada el 22 de diciembre de 2025, el tribunal de instancia declaró *No Ha Lugar* la solicitud de reconsideración a la *Sentencia Parcial.*[21]

Así las cosas, el 31 de diciembre de 2025, el señor Izquierdo Camacho interpuso una *Solicitud de sentencia sumaria parcial.*[22] Por su parte, el 20 de enero de 2026, la señora Pérez Rodríguez instó su oposición.[23]

Entre tanto, el 21 de enero de 2026, la peticionaria presentó un recurso de apelación en el alfanumérico TA2026AP00077.[24] Allí, cuestionó lo resuelto por el foro de instancia en la *Sentencia Parcial* emitida el 4 de diciembre de 2025. Conviene mencionar que del recurso apelativo no se desprende que hubiese cuestionado el dictamen emitido mediante *Resolución y Orden* del 16 de diciembre

---

[20] SUMAC TPI, a la Entrada Núm. 266, a la Pág. 14.
[21] *Íd.,* a la Entrada núm. 269.
[22] *Íd.,* a la Entrada Núm. 272.
[23] *Íd.,* a la Entrada Núm. 275.
[24] *Íd.,* a la Entrada Núm. 276. Véase, además, el SUMAC TA, en el alfanumérico TA2026AP00077, a la Entrada Núm. 1.

En el recurso apelativo, la peticionaria levantó los siguientes señalamientos de error:
> **PRIMERO**: Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al acoger y emitir la Sentencia Sumaria Parcial apelada cuando la compareciente no ha realizado un descubrimiento de prueba completo ni adecuado debido a la obstrucción, dilación y entorpecimiento del apelado.
> **SEGUNDO**: Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al concluir, sin antes permitir un descubrimiento de prueba adecuado, que el 33.3% de las acciones corporativas de Auto Stop, Inc. son de naturaleza privativa del apelado no formando parte del caudal ganancial.

de 2025, mediante el cual se ordenó la entrega de los documentos remitidos por el BPPR, cuyo asunto formó parte de la solicitud de reconsideración incoada y denegada.

De lo que sigue, el 30 de marzo de 2026, compareció de manera especial Oney Izquierdo Camacho, en su carácter personal como tercero no demandado y AUTO GROUP, mediante *Moción urgente de terceros no demandados solicitando orden protectora y terminación del descubrimiento de prueba.*[25] Alegó que la orden emitida por el tribunal concedía hasta el 15 de marzo de 2026, para revisar y someter las objeciones en torno a los documentos remitidos por error por el BPPR. En lo atinente, solicitó que se ordenara la devolución inmediata a BPPR de todos los documentos confidenciales retenidos indebidamente por la peticionaria, bajo apercibimiento de sanciones y que se ordenara la confirmación del cumplimiento con lo ordenado.

En respuesta, el 31 de marzo de 2026, el foro *a quo* emitió y notificó *Resolución y Orden.*[26] Mediante este dictamen, en lo pertinente, el tribunal de instancia ordenó a la peticionaria a acreditar haber realizado la devolución de los documentos confidenciales al BPPR, según ordenado mediante *Orden* del 16 de diciembre de 2025. Apercibió a la peticionaria que su incumplimiento conllevaría sanciones económicas severas. Concedió dos (2) días perentorios para cumplir y se le advirtió que, de incumplir, podría ser encontrada en desacato civil.

Según se desprende de los autos, el interín del trámite apelativo en el alfanumérico TA2026AP00077, el foro *a quo* se mantuvo atendiendo las incidencias procesales presentadas en el caso, incluyendo, pero sin limitarse a incidentes sobre imposición y

---

[25] SUMAC TPI, a la Entrada Núm. 295.
[26] *Íd.,* a la Entrada Núm. 296. Puntualizamos que mediante esta *Resolución* y *Orden* el foro de instancia también ordenó el cese de notificaciones a Oney Izquierdo Camacho, en su carácter personal como tercero no demandado y AUTO STOP GROUP.

pago de sanciones económicas e incidentes relacionados al descubrimiento de prueba. Además, mediante *Resolución* emitida y notificada el 8 de abril de 2026, el tribunal de instancia también declaró *No Ha Lugar* la solicitud de sentencia sumaria interpuesta por el señor Izquierdo Camacho.[27]

Ese mismo día, el señor Izquierdo Camacho compareció mediante *Solicitud de remedio*.[28] Alegó que en por lo menos tres (3) ocasiones, el foro *a quo* había emitido órdenes dirigidas a la peticionaria para que se devolvieran los documentos obtenidos del BPPR, sin orden del tribunal. Esbozó que el último término concedido para cumplir fue emitido en virtud de una *Orden* del 31 de marzo de 2026, para lo cual se concedieron dos (2) días. Agregó que dicho término venció sin que se hubiese recibido comunicación alguna a pesar de todos los apercibimientos emitidos.

En respuesta, mediante *Orden* emitida y notificada el 8 de abril de 2026, el tribunal de instancia ordenó a la peticionaria a acreditar el cumplimiento sobre entrega de documentos al BPPR y le concedió dos (2) días.[29] Le apercibió que, de incumplir, se le encontraría incursa en desacato.

Por otro lado, el mismo 8 de abril, compareció también el señor Oney Izquierdo Camacho, en su carácter personal como tercero no demandado, y AUTO STOP GROUP mediante *Moción de terceros no demandados informando incumplimiento contumaz de orden judicial perentoria y solicitud de imposición de sanciones*.[30] En esencia, y en lo pertinente, presentó alegaciones similares a las del recurrido. Solicitó que se declarara en desacato a la peticionaria y a sus representantes legales por haber incumplido con lo ordenado por el tribunal; ordenara la devolución inmediata de los documentos

---

[27] SUMAC TPI, a la Entrada Núm. 297.
[28] *Íd.*, a la Entrada Núm. 298.
[29] *Íd.,* a la Entrada Núm. 299.
[30] *Íd.,* a la Entrada Núm. 300.

de BPPR bajo apercibimiento de sanciones más severas y prohibiera la utilización absoluta de su uso, así como que diera por concluido el descubrimiento de prueba en cuanto a terceros no demandados. Entonces, mediante *Resolución* emitida y notificada en esa misma fecha, el foro *a quo* dispuso que las partes vieran lo resuelto en el SUMAC TPI, a la Entrada Núm. 299.[31]

Así las cosas, el 10 de abril de 2026, compareció la peticionaria mediante *Escrito informativo*.[32] Alegó haber devuelto los documentos al BPPR. Adjuntó un recibo con fecha del 10 de abril de 2026.

En respuesta, el 13 de abril de 2026, el tribunal *a quo* emitió y notificó *Resolución y Orden*.[33] En su dictamen, el tribunal impuso una sanción económica de $1,500.00 dólares a la peticionaria a favor del Estado Libre Asociado de Puerto Rico, y le concedió diez (10) días para emitir el pago. En la *Resolución y Orden,* el foro de instancia incluyó un resumen del trámite procesal relacionado a la controversia de autos. Explicó que, desde el 16 de diciembre de 2025, se había ordenado la devolución inmediata de los documentos requeridos por el BPPR y se incumplió. De otra parte, explicó que una razón ofrecida por la peticionaria para no haber entregado los documentos fue en una vista celebrada el 9 de febrero de 2026, cuando indicó que era porque uno de los errores señalados en el recurso apelativo TA2026AP00077 versaba sobre eso y, por tal situación, no los entregó. En otras palabras, que lo relacionado a esos documentos fue planteado como un error de derecho.

Por otro lado, abundó sobre todas las oportunidades dadas a la peticionaria para cumplir con lo ordenado desde el mes de diciembre de 2025, sin haberlo hecho. El tribunal de instancia

---

[31] SUMAC TPI, a la Entrada Núm. 301.
[32] *Íd.,* a la Entrada Núm. 304.
[33] *Íd.,* a la Entrada Núm. 306.

expresó que no les convenció su postura para haber incumplido con la orden sobre entrega de documentos. Añadió que, nuevamente, el 31 de marzo de 2026, se volvió a emitir una *Orden* para que se acreditara la entrega de los antedichos documentos y que, luego de transcurrido el término, presentaron un documento o recibo en el cual se observó que los mismos fueron entregados el 10 de abril de 2026. Lo anterior, llevó al foro de instancia a concluir que se incumplió tenazmente con las múltiples órdenes emitidas.

Inconforme con lo resuelto, el 20 de abril de 2026, la peticionaria instó una *Solicitud de reconsideración de sanciones*.[34] Adujo, en síntesis, que los documentos que se ordenó entregar formaban parte de la apelación en el alfanumérico TA2026AP00077. Esbozó que, tras la presentación de dicho recurso apelativo, los procedimientos quedaban paralizados y que no se había recibido el Mandato. A tenor, solicitó que se dejara sin efecto la sanción impuesta. En reacción, el 21 de abril de 2026, el señor recurrido presentó una *Oposición a moción de reconsideración*.[35] Adujo que no le asistía razón a la peticionaria puesto a que, contrario a lo alegado, en el recurso de apelación aludido no se mencionó ni se trajo a la atención del tribunal intermedio la orden dictada sobre entrega de documentos al BPPR. A tenor, no le asistía razón y debía denegarse la solicitud de reconsideración.

En respuesta, mediante *Resolución* emitida el 20 de abril de 2026, notificada al día siguiente, el foro de instancia declaró *No Ha Lugar* la solicitud de reconsideración.[36]

En lo relativo al trámite apelativo en el alfanumérico TA2026AP00077, mediante *Sentencia* emitida el 9 de abril de 2026, el Tribunal de Apelaciones *confirmó* la *Sentencia parcial* emitida el 4

---

[34] SUMAC TPI, a la Entrada Núm. 312.
[35] *Íd.,* a la Entrada Núm. 313.
[36] *Íd.,* a la Entrada Núm. 315.

de diciembre de 2025.[37] Luego, el 29 de abril de 2026, el Tribunal de Apelaciones emitió una *Resolución* mediante la cual denegó una solicitud de reconsideración interpuesta en el referido caso, por la señora Pérez Rodríguez.[38] Conviene mencionar que, del expediente judicial en el antedicho caso, no se desprende que el Mandato en este caso hubiese sido notificado.

Finalmente, y en desacuerdo con la *Resolución y Orden* del 13 de abril de 2026, cuya solicitud de reconsideración fue denegada mediante *Resolución* notificada el 21 de abril de 2026, el 8 de mayo de 2026, compareció la peticionaria mediante *Petición de certiorari*, en la cual esgrimió la comisión de los siguientes dos (2) errores:

> PRIMER ERROR: Cometió grave error y abuso de discreción el Tribunal de Primera Instancia al imponer una sanción por alegadamente incumplir una orden, cuando no solo se cumplió antes de imponerse, sino que cuando la impuso no tenía jurisdicción para ello.
>
> SEGUNDO ERROR: La sanción impuesta por el Tribunal de Primera Instancia es excesiva, abusiva, arbitraria e irrazonable, constituyendo un claro abuso de discreción.

Mediante *Resolución* emitida el 11 de mayo de 2026, concedimos a la parte recurrida hasta el 18 de mayo de 2026, para expresarse en torno al recurso.

Luego, el 14 de mayo de 2026, la peticionaria interpuso una *Urgente solicitud en auxilio de jurisdicción*. Examinada la misma, disponemos declararla *No Ha Lugar*.

Conforme a la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones este Tribunal tiene "la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho".[39]

En consideración a lo anterior, dejamos sin efecto nuestra *Resolución* del 11 de mayo de 2026, mediante la cual concedimos

---

[37] SUMAC TA, en el alfanumérico TA2026AP00077, a la Entrada Núm. 6.
[38] *Íd.*, en el alfanumérico TA2026AP00077.
[39] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025).

término a la parte recurrida para presentar su oposición. Así, pues, procederemos a disponer del recurso instado.

II

### A. La Expedición del recurso de *Certiorari*

Los recursos de *certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[40] Esta Regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo, mediante el recurso de *certiorari*, sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[41]
>
> […].[42]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.
>
> […].[43]

---

[40] 32 LPRA Ap. V, R. 52.1.
[41] *Íd.*
[42] *Íd.*
[43] *Íd.*

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[44] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[45] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[46] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[47]

De otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar ciertos criterios para expedir un auto de *certiorari*. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [48]

Por otro lado, el Tribunal Supremo de Puerto Rico ha establecido que un tribunal revisor no debe sustituir su criterio por

---

[44] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[45] *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011).
[46] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[47] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.
[48] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[49] Igualmente, al evaluar la procedencia del referido auto, debemos tener presente que el foro primario tiene amplia discreción para manejar los casos ante su consideración.[50] De manera que los Tribunales Apelativos no debemos pretender conducir ni manejar el trámite ordinario de los casos que atiende la primera instancia judicial.[51] Ello, puesto que el foro primario es el que mejor conoce las particularidades de los asuntos ante su consideración.[52]

Por último, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos.[53] Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[54]

### III

En el recurso ante nuestra consideración la peticionaria nos invita a concluir que la primera instancia judicial actuó sin jurisdicción y, en su proceder, se equivocó al imponer una sanción económica por incumplir con una orden. En la alternativa, nos plantea que la sanción impuesta fue una excesiva, abusiva, arbitraria, irrazonable por lo que constituyó un abuso de discreción.

Como cuestión de umbral, este Tribunal tiene la ineludible tarea de auscultar su autoridad para entender en el recurso presentado. Dado a lo anterior, nos dimos a la tarea de evaluar el recurso y la totalidad de los autos ante nuestra consideración, así como los autos ante el foro recurrido en el SUMAC TPI.

---

[49] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[50] *BPPR v. SLG Gómez-López*, 213 DPR 314, 334 (2023).
[51] *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012).
[52] *Íd.*
[53] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).
[54] *Torres Martínez v. Torres Ghigliotty*, supra, a la pág. 96.

Según adelantamos, la peticionaria esgrime que el foro de instancia actuó sin jurisdicción al imponer la sanción económica. Esto, particularmente, dado a que el tribunal impuso la misma, mientras estaba ante la consideración del Tribunal de Apelaciones el caso TA2026AP00077. Adujo la peticionaria, que en dicho recurso se trajo a la atención de este foro la orden dictada sobre entrega de documentos al BPPR.

Tratándose de una cuestión de umbral, atenderemos este asunto con preferencia.

En lo pertinente, la Regla 18 del Tribunal de Apelaciones establece que "[u]na vez presentado el escrito de apelación, se suspenderán todos los procedimientos en el Tribunal de Primera Instancia respecto a la sentencia, o parte de esta, de la cual se apela, o a las cuestiones comprendidas en esta [. . .]".[55] Ahora bien, "el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión no comprendida en la apelación".[56]

Dicho lo anterior, y luego de revisar la totalidad de los autos ante nuestra consideración, no compartimos la postura de la peticionaria. Los asuntos relacionados a la *Resolución y Orden* emitida el 16 de diciembre de 2025, a pesar de haber sido objeto de la solicitud de reconsideración presentada el 19 de diciembre de 2025, fueron atendidos mediante *Resolución* del 22 de diciembre de 2025, la cual fue denegada. Revisado la totalidad de los autos en el recurso apelativo TA2026AP00077, nada se planteó sobre este asunto. Tampoco se presentó un recurso apelativo independiente sobre este particular. A tenor, el foro *a quo* contaba con autoridad para atender las controversias relacionadas al asunto de marras y no operó una paralización tal y cual planteado.

---

[55] *In re Aprob. Enmdas. Reglamento TA*, supra, a la pág. 34.
[56] *Íd.*

Superado lo anterior, y luego de un análisis minucioso de la totalidad de los autos ante nuestra consideración y de los autos ante el tribunal recurrido en el SUMAC TPI, hemos acordado que no procede nuestra intervención con la determinación recurrida.

Sin el ánimo de resultar reiterativos, vemos que la peticionaria nos ha planteado su inconformidad con la sanción económica impuesta por su incumplimiento con varias órdenes emitidas por el foro de instancia en torno a la entrega de ciertos documentos al BPPR.

Conforme expusimos en nuestra exposición doctrinal previa, el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[57] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Ahora bien, esta Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[58]

Es nuestra apreciación que en este caso no se configuran ninguna de las instancias que justificaría la expedición del auto de *certiorari* al amparo de Regla 52.1 de Procedimiento Civil,[59] ni tampoco en virtud de la Regla 40 del Reglamento del Tribunal de Apelaciones.[60] Los señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Por otro lado, entendemos que el dictamen recurrido no es patentemente erróneo, y encuentra cómodo resguardo en la sana discreción de la primera instancia

---

[57] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[58] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.
[59] 32 LPRA Ap. V, R. 52.1.
[60] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.

judicial. Además, razonamos que la peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Menos aún, cuando coincidimos en que no existen elementos que justifiquen nuestra intervención con el manejo del caso, según determinado por el foro primario en este caso.

Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari* y, por consiguiente, se declara *No Ha Lugar* la solicitud en auxilio de jurisdicción.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones